TRENCHARD et ux. v. REAY et al.

No. 4498.   Decided June 10, 1927.   (257 P. 1046.)

20

*B. C. Call* and *Le Roy B. Young,* both of Brigham City, for appellants.

*Arthur E. Moreton,* of Salt Lake City, for respondents.

GIDEON, J.

Plaintiffs are husband and wife. Ada Reay Trenchard is the daughter of defendant Alexander Reay and sister of defendant Margaret Jamison. Defendant A. C. Reay is the son of Alexander Reay and brother of Ada Reay Trenchard. John S. Jamison is husband of Margaret Jamison. Specific performance of an alleged oral contract for the conveyance of real estate is sought by plaintiffs. The relationship of the parties and the circumstances leading up to the contract claimed to have been made between plaintiffs and Alexander Reay are alleged in the complaint. The making of the contract and the occupancy of the prem-

ises jointly by plaintiffs and Alexander Reay and his wife, now deceased, are also alleged. The performance of services claimed to have been undertaken on the part of plaintiffs is alleged, as well as the date to which such services continued, the death of the wife of Alexander Reay, and the subsequent removal of Alexander Reay, from the premises in controversy. It is then alleged that the attention and services given and rendered by plaintiffs to Alexander Reay and his wife Mary C. Reay, were of the reasonable value of $80 per month, and that the services performed for Alexander Reay after the death of his wife were of the reasonable value of $40 per month. It is also alleged that plaintiffs, while in possession of the premises, made permanent improvements thereon and paid the taxes, both general and special. A. C. Reay and John S. Jamison and his wife are made parties defendant by reason of certain allegations that Alexander Reay had entered into a contract and had conveyed the premises in controversy to them. The answer denies that any contract as alleged in the complaint was made, and also denies that any services were rendered by plaintiffs for Alexander Reay. It also denies the value of such services as alleged, and alleges that there is nothing due plaintiffs from defendants or either of them.

Subsequent to the date that Alexander Reay conveyed the premises in question to his codefendants John S. Jamison and A. C. Reay, the two last-named demanded possession thereof from plaintiffs. This demand was refused.

At the opening of the trial, defendants were permitted to file a counterclaim seeking to recover the reasonable rental value of the premises while so occupied by plaintiffs.

No demurrer was filed, general or special, nor were any objections made prior to or during the trial that the complaint does not state a cause of action or that the complaint improperly joins two causes of action.

The trial court entered judgment denying plaintiffs any relief, dismissed their complaint, and gave judgment upon the counterclaim in favor of the defendants and against

plaintiffs for the rental value of the premises from and after the date that demand was made for possession of the premises. The court found the rental value to be $25 per month. From the judgment so entered, plaintiffs appeal.

Upon the trial court expressing its view that plaintiffs had not established the contract alleged in the complaint with sufficient certainty to justify or authorize a court of equity to grant specific performance, counsel for plaintiffs sought to amend their complaint so as to entitle plaintiffs to recover for the value of any services rendered by them. This the court denied. The proposed or offered amendment is not in the record but it apears that plaintiffs desired to amend their complaint so that the court could determine the issue of whether any services had been rendered, and, if so, the reasonable value thereof.

Plaintiffs prayed the court to declare the conveyance made to defendants Jamison and A. C. Reay to be null and void as against plaintiffs; that defendants and each of them be restrained from interfering with the possession of the premises or with the rents and proceeds thereof. The third and fourth subdivisions of the prayer are as follows:

"(3) That the covenant made between the plaintiffs and the defendant Alexander Reay and his said wife, Mary C. Reay, now deceased, as heretofore set out, and that the same be specifically performed, and that said defendants be adjudged to convey the said property to the plaintiffs and to execute a good and sufficient warranty deed therefor to them, or that said property may be held to satisfy the claim of the plaintiffs as above set forth and that they may be declared to have a lien against said property for the value of the services performed and money expended in making improvements and for taxes and assessments paid thereon.

"(4) Plaintiffs pray for such other and further relief as is just and equitable and for costs."

The assignments of error assail practically every finding of the court, and it is claimed that the findings are against the weight of the evidence.

Plaintiffs testified in the case and their testimony is to the effect that there was an agreement on the part of

Alexander Reay and his wife, now deceased, that, if plaintiffs would occupy the premises with the Reays and care for and wait upon them during the remainder of their lives, plaintiffs should have the property in controversy; that upon such suggestion plaintiffs changed their place of residence from Malad, Idaho, to Brigham City, Utah; that Mrs. Trenchard assisted her father and mother in selecting the said property; and that such selection was made with a view to please or satisfy their said daughter. The parties did occupy the premises; Alexander Reay and his wife occupying one room and plaintiffs and their family other parts of the building, and two rooms were rented much of the time. Other witnesses testified that the deceased wife of Alexander Reay at various times said that her daughter Ada should have the home. There is also testimony that Alexander Reay stated that his daughter Ada should be well paid for the services that she was rendering. Alexander Reay denied the making of the contract to give plaintiffs the premises, and also denied that there was any understanding or agreement from which such a contract could be inferred. There was much testimony by different members of the family that in no way tended to either prove or disprove the issues presented by the pleadings, and which was therefor wholly immaterial and incompetent. Other members of the family testified of services that they had rendered their father and mother with a view, as we assume, of attempting to establish that plaintiffs had done no more for their parents than had those particular members testifying.

The trial court found the issues against plaintiffs, and the record is such that this court would not be justified or authorized to disturb those findings. It would serve no good purpose to further review the testimony. This is a family dispute, and the matter grew out of one of those family arrangements that all too frequently result in an estrangement of the members of the family and create a lasting esmity which even time does not assuage. It appears from the

record in this case that two sisters, Mrs. Trenchard and Mrs. Jamison, who had before this difficulty been very fond of each other and been of mutual assistance to their parents and to each other were necessarily estranged. The two brothers who testified in the case deemed it their duty to repeat alleged confidential communications which their sister, Mrs. Trenchard, had made to them respecting her husband, thereby making their further friendly associations with their sister, Mrs. Trenchard, seemingly impossible. From the record as we view it, however, it is apparent that plaintiffs at the time of entering upon the occupancy of the property were of opinion that they were to be compensated in some way for the services they were required to give, and which it is claimed by them that they did give, in caring for and looking after the wants of Alexander Reay and his wife during her lifetime. Whether that compensation was to be in the form of receiving free rent or receiving other compensation is not clearly established.

In the judgment of the trial court, the terms of the alleged contract were not established with that degree of certainty necessary to authorize a chancellor to direct specific performance of an oral contract for the conveyance of real estate, and with that conclusion we are in accord. It is the rule in this jurisdiction that one seeking in equity the specific performance of a parol contract must establish the terms thereof with a greater degree of certainty than is required in an action at law. *Montgomery* v. *Berrett*, 40 Utah 385, 121 P. 569. All of the circumstances in this case, however, as we view the record, tend to establish that there was some understanding or agreement that plaintiffs should receive compensation for the services rendered by them. The trial court apparently recognized that plaintiffs were entitled to have the question determined as to whether they should receive compensation for the services so rendered, but was of opinion that—

"The nature, amount, and extent thereof is immaterial in this action, for the reason that this action is one in equity for specific

performance instituted by the plaintiffs for the purpose of requiring the said defendant Alexander Reay to convey to the said plaintiffs the property herein described pursuant to the alleged agreement hereinbefore referred to."

In the conclusions of law it is stated that—

"If the plaintiffs performed services as alleged in said complaint in nursing and otherwise caring for the said defendant Alexander Reay and his deceased wife, Mary C. Reay, or expended money in their behalf, the same is without the issues in this case, and the court is without jurisdiction to render a judgment for such services or money, if any, in favor of the plaintiffs and against the defendant Alexander Reay, and therefore the amount extent, and value of said services or money advanced, if any, is not determined herein."

And in the decree it is provided:

"That the plaintiffs take nothing herein by reason of their complaint against the said defendant, but it is expressly provided that this judgment is entered herein without prejudice to the plaintiffs bringing an action against the said defendant Alexander Reay for services rendered, board furnished and money advanced to him, the extent, value, and amount of such service, if any, rendered by the plaintiffs, and money, if any, advanced to the said defendant Alexander Reay and his wife, Mary C. Reay, being expressly reserved and not determined in this action; and this decree is likewise entered without prejudice to the rights of the said Alexander Reay to offset or counterclaim as against any such claims as may be made by the plaintiffs, any claim that he may have against the said plaintiffs for the use and occupancy of the said premises, or otherwise, such issues being without the jurisdiction of this court in this action."

Error is assigned upon the foregoing conclusion or holding of the court and upon its judgment refusing to entertain and determine the value of the services, if any, which plaintiffs had rendered Alexander Reay and his wife, now deceased, and in refusing to adjudicate the rights of the parties in that respect in this action.

As we have pointed out, the value of the services claimed to have been rendered is alleged in the complaint, the value of the permanent improvements and the amount of money

claimed to have been advanced by plaintiffs for improving the property and other purposes are also alleged. The prayer of the complaint is sufficiently comprehensive to have entitled the court to grant this relief. There was some testimony in support of these allegations. While it is true that the claim for compensation and for money expended is not stated in the complaint as a separate and distinct cause of action, nevertheless there are sufficient allegations in the complaint, in our judgment, to entitle plaintiffs to a judgment for such services rendered and money expended if the court had found that any such services were rendered or money expended as alleged. It is a familiar rule in this state that a court of equity once having acquired jurisdiction of the subject-matter and of the parties will retain jurisdiction to do justice and determine the rights of the parties so long as such rights are within the issues presented by the pleadings. The plaintiffs' claim for specific performance is, as we have indicated, founded upon their alleged right to compensation for services which they allege they had contracted to perform and which the allegations are they did actually perform for Alexander Reay and his wife during her lifetime. The right to compensation therefor is so connected with the claim of plaintiffs for specific performance that the court was authorized to grant such relief in an action for specific performance. In other words, the claim for compensation in the event specific performance is denied is not so disconnected with the claim for specific performance that the court should refuse to take jurisdiction of that phase of the controversy and render whatever judgment the facts and the circumstances warrant.

The Supreme Court of Michigan, in concluding an opinion in a case involving facts similar to those in the instant case, and after denying specific performance of an alleged oral contract, says:

"There is no reason, however, why an accounting should not be had in which the [plaintiffs] may be allowed their disbursements,

whether for betterments of the property or for the expenses of the sickness and burial." *Fowler* v. *De Lance*, 146 Mich. 638, 110 N. W. p. 44.

The Supreme Court of Wisconsin, in *Knauf & Tesch Co.* v. *Elkhart Lake S. & G. Co.*, 153 Wis. p. 318, 141 N. W. 705, 48 L. R. A. (N. S.) 744, quoting from *Gates* v. *Paul*, 117 Wis. 170, 94 N. W. 55, says:

"If one sues in equity in good faith and fails to establish his cause but shows a state of facts entitling him to recover at law, the court, having rightfully obtained jurisdiction for a proper purpose, may retain the cause and grant just such relief as upon the facts the plaintiff appears entitled to, whether at law or in equity."

Continuing, the court further says:

"I may be permitted to say for myself, in passing, that, where warrant can be found in the Code for dismissing an action, under any circumstances, merely because relief was sought in equity and the nature of the redress warranted by the proven facts is legal only, I have never been able to find. Neither have I been able to appreciate how the practice to the contrary, to any extent, was retained under the Code. We have but one form of action, one form of complaint, one method of forming issues, and one court for the trial thereof. There is no jurisdictional question, in the technical sense, which could arise as to whether a cause of action should be constructively in a court of equity or in a court of law. The court having jurisdiction in one aspect has jurisdiction in the other. In either case the complainant is required in plain and concise language to tell his story, and he is entitled thereon, the facts being established, to just such relief as is appropriate to redress any wrong or vindicate any right which is within the competency of the court to grant. In case the matter requires interference by a jury, it is under the control of the court to give it that direction as matter of administration."

Two opinions of this court are to the same effect as the rule stated in the foregoing quotations. *Kinsman* v. *Utah G. & C. Co.*, 53 Utah, 10, 177 P. 418; *Barboglio* v. *Gibson*, 61 Utah, 314, 213 P. 385. See, also, *Dolan* v. *Cain*, 59 Wash. 259, 109 P. 1009.

There is but one form of civil action under our Code. Comp. Laws Utah 1917, § 6442. Under our Constitution

(article 8, § 19), law and equity may be administered in the same action. The same judge administers both law and equity. If a new action should be instituted by plaintiffs herein, it would be tried before the same court having the same jurisdiction as the court had in the trial of the present action. The trial court permitted the defendants to recover a judgment upon a counterclaim against plaintiffs. The counterclaim set forth a cause of action at law. Just why the court conceived that in a proceeding of this nature it could grant the defendants legal relief and not the plaintiffs who instituted the action is not clear.

Some complaint is made in the briefs of counsel for plaintiffs that the judgment upon the counterclaim runs in favor of all of the defendants, when it is alleged that, if any judgment should be entered upon the counterclaim, it should be in favor of the defendants A. C. Reay and █ John S. Jamison, as they claim to be the owners of the property and were the grantees in the conveyance of the premises by Alexander Reay. We regard that as wholly immaterial and in no way prejudicial. The payment of the judgment by plaintiffs to any of the defendants would constitute a full release, and they could in no way be prejudiced by the fact that the court inadvertently rendered judgment in favor of all of the defendants.

The order will be that the judgment of the trial court in denying plaintiffs specific performance is affirmed, and that the judgment in defendants' favor upon the counterclaim is likewise affirmed. In other respects the cause is remanded to the district court of Box Elder county, with directions to that court to permit the parties to amend their pleadings if they are so advised, and determine whether plaintiffs are entitled to compensation for their services and expenditures alleged to have been rendered and made. Costs on appeal will be equally divided between the parties.

THURMAN, C. J., and CHERRY, STRAUP, and HANSEN, JJ., concur.